**ASHTON PARK APARTMENTS, LTD., Plaintiff,**

v.

**Avram LEBOR, et al., Defendant.**

**No. 3:02 CV 7295.**

United States District Court, N.D. Ohio, Western Division.

March 19, 2003.

**540**

Reginald S. Jackson, Jr., Tammy Geiger Lavalette, Connelly, Jackson & Collier, Stephen R. Serraino, Anspach, Serraino, Meeks & Nunn, Toledo, OH, for Defendants.

Keith A. Wilkowski, Vassar, Dills & Dawson, Toledo, OH, Margaret M. Melican, Worcester, MA, for Plaintiff.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendant Martin Epstein's motion to dismiss (Doc. No. 10), as to which Plaintiff has filed a response (Doc. No. 34) and Defendant Martin Epstein has filed a reply (Doc. No. 35); and Plaintiff's motion for prejudgment attachment (Doc. No. 27), as to which Defendants have filed responses (Docs. Nos. 28 & 33).

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1332. For the reasons stated below, Epstein's motion to dismiss will be denied. Plaintiff's motion for prejudgment attachment will also be denied.

### BACKGROUND

On October 11, 2000, Plaintiff Ashton Park Apartments, Ltd., ("Ashton Park"), an Ohio limited liability company, entered into a contract with MKD Capital Corp. ("MKD"), a dissolved New York corporation, which was to provide financing to Ashton Park for the development of a residential building project in Lucas County, Ohio. Gary L. Howe ("Howe"), the Managing Member, signed the contract on behalf of Ashton Park. Defendant Avram Lebor signed the contract for MKD in his capacity as President. The financing was to consist of a six-year mortgage loan in excess of $ 7,000,000 with quarterly interest payments at a rate to be fixed at the time of closing. Plaintiff paid MKD a $ 100,000 commitment fee along with a $ 10,000 retainer fee for legal services to be performed by Defendant Martin Epstein ("Epstein") in his capacity as MKD's attorney.

On February 7, 2001, Howe sent a letter to Avram Lebor expressing his frustration with MKD's inability to provide the financing to which it had committed. Pursuant

to a conversation alleged to have occurred between the two earlier that week, Howe provided MKD a thirty (30) day extension within which to fulfill its obligations. He also demanded that he receive a copy of the closing documents by February 22, 2001. He informed Avram Lebor that failure to perform would result in Ashton Park taking several actions including, *inter alia,* initiation of a lawsuit against MKD, its affiliates, and Avram Lebor in his personal capacity, contacting the New York U.S. Attorney's Office and other regulatory agencies, and "[a]ny other avenue my attorneys can develop that will legally make doing business for you very difficult." Howe, however, continued to seek MKD's compliance with its obligations under the contract rather than pursue his threatened alternative courses of action.

On April 25, 2002, (over a year later) Howe sent another letter to Defendant Avram Lebor, purportedly reducing to writing his understanding of a conversation between the two from the previous evening. In this letter, he indicated that the two had discussed MKD's ability to provide funding for interim loans, including one on behalf of Ashton Park. Howe noted that he asked Avram Lebor for a "drop dead" date by which MKD would have sufficient capital to fund the interim financing for Ashton Park. If the interim financing was timely provided, Ashton Park would extend the closing deadline one last time, so long as it was within two (2) weeks of Ashton Park's receiving the interim funding. On the same day, MKD distributed an update to its clients informing them that they were close to obtaining financing for the Accommodation Loan/interim funding, and expected that the funds would be available within the week.

On June 13, 2002, maintaining that no financing had ever been provided, Plaintiff filed the instant action against MKD, Avram Lebor, Epstein, Michael Lebor, Donald Klabin, American Floral Company d/b/a Flower.Com, Walter J. Kassuba, Mohan Kumar d/b/a Kedia Power Limited, Wendover Associates, Treucom AG, Radius Capital, LTD., Transpacific Gas, LTD., Multi Factoring AG, Windsor Fund, Thompson LLC, and Ury and Genia Rapoport. The complaint alleges several claims, including breach of contract, fraud and deceit, money had and received, conversion, reach and apply stock, reach and apply property interest, reach and apply deposits, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* and breach of fiduciary duty and negligence specifically against Epstein.[1]

### DISCUSSION

#### A. DEFENDANT EPSTEIN'S MOTION TO DISMISS

##### 1. 12(b)(2) Motion to Dismiss Standard

Pursuant to Fed.R.Civ.P. 12(b)(2), Epstein moves the Court to dismiss Plaintiff's complaint for lack of personal jurisdiction. In response to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir.1998); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1261–62 (6th Cir.1996). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three proce-

---

**1.** Pursuant to Fed.R.Civ.P. 41(a), Plaintiff voluntarily dismissed without prejudice its claims against Defendants Genia and Ury Rapoport, Multi Factoring AG, Transpacific Gas, LTD, Treucom AG, Radius Capital, LTD., and Mohan Kumar d/b/a Kedia Power. (Docs. Nos. 36 & 37). The Court also granted Defendant Flower.Com's motion for a stay by operation of 11 U.S.C. § 362. (Doc. No. 46).

dural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir.1991) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir.1989)). The method selected is left to the discretion of the district court. *Id.* Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (quoting *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir.1974)); *Serras*, 875 F.2d at 1214. The district court's choice determines the weight the plaintiff's burden. *See Dean*, 134 F.3d at 1272; *Theunissen*, 935 F.2d at 1458; *Serras*, 875, F.2d at 1214.

> "When ... a district court rules on a jurisdictional motion to dismiss ... without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff ... To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction. Furthermore, a court ... does not weigh the controverting assertions of the party seeking dismissal ..."

*Dean*, 134 F.3d at 1272 (quoting *CompuServe*, 89 F.3d at 1262). Dismissal is only proper if all the facts taken together fail to establish a *prima facie* case for personal jurisdiction. *CompuServe*, 89 F.3d at 1262.

---

**2.** The Court notes that Plaintiff's Complaint also alleges that the Defendants, including Epstein, have violated RICO, which provides a broader test of personal jurisdiction than that provided for in *Mohasco*. *FRC Int'l v. Taifun Feuerloschgeratebau und Vertriebs*

While the standard set forth above for establishing personal jurisdiction in the absence of an evidentiary hearing is minimal, a defendant is not without recourse. *Dean*, 134 F.3d at 1272 (citing *Serras*, 875 F.2d at 1214–15). A defendant can move the Court to hold a pre-trial hearing, or the Court may so do on its own if it believes that the written filings raise enough controverted facts or call for assessing credibility, and order sufficient discovery in advance of the hearing. *Id.* Further, even if the court issues an order finding personal jurisdiction over the defendant, the defendant may raise lack of jurisdiction at trial. *Id.*

"In dealing with a diversity case, we look to the law of the forum state to determine whether personal jurisdiction exists." [2] *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir.2000). *See also Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996) (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1298 (6th Cir.1989)). That is, personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir.2002) (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir.1992)). In *Bird*, however, the court stated:

> We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir.2000) (noting that "the Ohio Su-

---

*GmbH*, No. 3:01 CV 7533, 2002 WL 31086104, at *6, 2002 U.S. Dist. LEXIS 17559, at *18 n. 1 (N.D.Ohio Sept.4, 2002) (citing *Suarez v. McGraw*, 71 F.Supp.2d 769, 777 (N.D.Ohio 1999)).

preme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause") (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n. 1 (1994)) (per curiam). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird*, 289 F.3d at 871–72.

Personal jurisdiction may be based on either general or specific jurisdiction. *Id.* at 873. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* at 873 (quoting *Third Nat'l Bank in Nashville v. WEDGE Group Inc.*, 882 F.2d 1087, 1089 (6th Cir.1989)). In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction may be based on a single act. *Nationwide*, 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

**B. JURISDICTION OVER DEFENDANT EPSTEIN**

**1. Due Process Requirements**

On the facts set forth below, jurisdiction is proper, if at all, based on specific jurisdiction. The Court first focuses its analysis on due process concerns. Specific jurisdiction exists, consistent with due process, if Epstein's contacts with the State of Ohio satisfy all three prongs of the test set forth in *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

"The purposeful availment prong of the *Southern Machine* test is essential." *Calphalon*, 228 F.3d at 721. This requirement "is present when the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a substantial connection with the forum state.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir.2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). It makes sure that a defendant "should reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Purposeful availment "ensures that defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" *Id.* (quoting *Burger King Corp. v. Rudzew-*

*icz*, 471 U.S. at 475, 105 S.Ct. 2174). The purposeful availment requirement has been described as "the *sine qua non* of *in personam* jurisdiction." *Theunissen*, 935 F.2d at 1460 (quoting *Mohasco*, 401 F.2d at 381–82).

■ Since Epstein has failed to support his motion by way of affidavit or otherwise, Plaintiff is free to rest on the facts in its Complaint to show a *prima facie* case of jurisdiction.[3] The facts in Plaintiff's Complaint are sufficient for the Court to rule on his motion to dismiss without conducting an evidentiary hearing.[4] Ashton Park's complaint alleges, *inter alia*, the following:

- The Defendant, MKD Capital, hereinafter referred to as "MKD Capital," is a dissolved entity, organized under the laws of the State of New York and has as its usual place of business at 213 West 35th Street, 10th Floor, New York, New York and is a citizen of the State of New York. MKD Capital as an incorporated or unincorporated entity is an "enterprise" as defined in Title 18, Section 1961 et seq. (Doc. No. 1, ¶ 6).

- The Defendants, Avram Lebor, Michael Lebor, Klabin and Epstein did business under the firm name and style of MKD Capital. (Doc. No. 1, ¶ 7).

- Ashton Park entered into a contract with MKD Capital on or about October 11, 2000 whereby MKD Capital would provide financing for the construction of a residential building project and Ashton Park would pay MKD Capital $ 110,000 as commitment deposit and for legal fees. . . . Ashton Park did not

know that MKD Capital was a dissolved entity. (Doc. No. 1, ¶ 21).

- Ashton Park fully and completely performed all its contractual obligations under the contract and paid to the Defendants $ 100,000 in deposit monies and $ 10,000 in deposit for fees for the Defendant Epstein's expenses. Ashton Park, in reliance upon the performance of MKD Capital in the aforesaid contract incurred other expenses and liability in an amount exceeding $ 500,000. (Doc. No. 1, ¶ 22).

- At all times MKD Capital, the individual Defendants, Avram Lebor, Michael Lebor, Epstein and Klabin expressly and affirmatively represented by U.S. mail, electronic mail, facsimile and telephone to the Plaintiff that they individually and collectively had the capacity and intentions to perform the obligations set out in the contract. . . . The representations were false when made but the Defendants intended that they Plaintiff rely thereon. (Doc. No. 1, ¶ 24).

- At all times material hereto, MKD Capital and the individual Defendants expressly and affirmatively represented by U.S. mail, electronic mail, facsimile and telephone that they had extensive and successful experience in producing. These representations were false when made but the Defendants intended that the Plaintiff rely thereon. (Doc. No. 1, ¶ 25).

The Complaint contains several other paragraphs alleging that Epstein, together with the other individual Defendants, made false representations, but failed to provide

---

**3.** Plaintiff initially failed to attach several documents in support of the allegations contained in the Complaint, but has subsequently filed these documents. (Doc. No. 26). While Epstein may not have had access to these

documents before filing his motion, he did have the benefit of their use in filing his reply.

**4.** Neither Epstein nor Plaintiff has requested jurisdictional discovery or an evidentiary hearing.

the financing required under the contract as the Defendants had no means of providing the promised financing. (Doc. No. 1, ¶¶ 26–28).

In the case *sub judice*, accepting the allegations in Plaintiff's complaint as true and viewing the evidence in a light most favorable to Plaintiff, the Court finds that the due process requirements set forth in *Mohasco* are satisfied and Ashton Park has made a *prima facie* showing of jurisdiction. Generally, "the use of interstate facilities such as the telephone and mail is a 'secondary or ancillary' factor and 'cannot alone provide the minimum contacts required by due process.'" *Reynolds v. Int'l Amateur Athletic Fed'n,* 23 F.3d 1110, 1119 (6th Cir.1994) (quoting *Scullin Steel Co. v. National Ry. Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982)). Further, the "mere existence of a contract ... is insufficient to confer personal jurisdiction ..." *Calphalon,* 228 F.3d at 722. *Compare Cole,* 133 F.3d at 436 (explaining that a nonresident who negotiates and executes a contract using ancillary facilities "has purposefully availed himself of the forum by creating a continuing obligation in Ohio").

However, in *Neal v. Janssen,* 270 F.3d 328, 332 (6th Cir.2001), notwithstanding the defendant's lack of physical presence in Tennessee, the court affirmed the district court's adoption of the magistrate's report and recommendation denying the defendant's motion to dismiss. The *Neal* court found that the defendant had satisfied *Mohasco's* purposeful availment requirement by making false representations via phone calls and faxes that were directed to the plaintiffs in Tennessee. In *Neal,* the court stated:

"When the actual content of communications into the forum gives rise to an intentional tort action, that alone may constitute purposeful availment .... the actions of sending false information into Tennessee by phone and fax had foreseeable effects in Tennessee and were directed at individuals in Tennessee." *Id.* Further, the *Neal* court found that the second prong of *Mohasco* was met as "[t]he alleged misrepresentations are the elements of the cause of action itself." *Id.* Finally, in *Neal,* the court determined that the third prong of *Mohasco* was satisfied since the defendant had "established a relationship with plaintiffs from which he hoped to profit financially. He then defrauded plaintiffs, altering the amount of money to be sent to them in Tennessee. These facts are sufficient to make it reasonable for Tennessee to exercise personal jurisdiction over defendant."[5] *Id.* at 333.

Likewise, in *FRC,* the plaintiff, a Delaware corporation with its principal place of business in Ohio, brought suit against a German corporation alleging breach of contract, fraud and violations of RICO as the result of a contract entered into and subsequent fraudulent communications as to fulfillment of its terms via interstate communications facilities. Plaintiff also brought suit against the corporation's owner, a German citizen, for fraud and violations of RICO. Notwithstanding the defendant's lack of physical presence in Ohio, in *FRC,* the court found that all of the *Mohasco* factors had been satisfied. The *FRC* court found the defendant had satisfied the purposeful availment requirement, explaining that the content of the fraudulent communications from the defendant to the plaintiff "form the bases of the fraud and breach of contract actions. [The defendant] Taifun therefore purposefully availed itself of Ohio because Taifun's conduct created a 'substantial connection' with Ohio so that Taifun reasonably should have

5. Indeed "[a]n inference arises that the third [*Mohasco*] factor is satisfied if the first two

requirements are met." *Bird,* 289 F.3d at 875 (citing *CompuServe,* 89 F.3d at 1268).

anticipated being haled into court in Ohio." *FRC*, 2002 WL 31086104, at *4, 2002 U.S. Dist. LEXIS 17559, at *12–13; *Calphalon*, 228 F.3d at 722 (emphasizing that the parties course of conduct, including negotiations and performance of their obligations, along with the quality of their relationship determines whether personal jurisdiction in the forum state is proper). Moreover, *FRC* the court found that both causes of action arose from the defendant's ongoing conduct and communications toward the Ohio based plaintiff, and that exercise of personal jurisdiction was reasonable. *Id.* at *5, 2002 U.S. Dist. LEXIS 17559, at *13–14.

In *FRC*, the court applied the same rationale in holding that jurisdiction was proper over the corporation's only shareholder and owner. *Id.* at *6, 7, 2002 U.S. Dist. LEXIS 17559, at *17–20. The court rejected the argument that as the corporation's officer and/or agent, the defendant was shielded from personal jurisdiction. In so doing, the court stated: "An out-of-state agent can be amenable to suit when that agent is actively and personally involved in the conduct which is the basis for the claim and exercise of personal jurisdiction meets traditional notions of fair play and substantial justice." *Id.* (citing *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir.2000)); *Weller*, 504 F.2d at 929 (asserting that jurisdiction over corporate officers "cannot be predicated merely upon jurisdiction over the corporation").

Similarly, Epstein purposely availed himself of acting in Ohio or causing a consequence therein. Plaintiff alleges that Defendants, including Epstein, entered into a contract to provide financing for Plaintiff's residential building project in Ohio from which they would profit.[6] Epstein, and other Defendants are purported to have directed fraudulent communications to Plaintiff in Ohio reassuring Plaintiff of their ability to fulfill the commitment to provide financing.

Further, Ashton Park's claims arise Epstein's alleged actions, including fraudulent representations "by U.S. mail, electronic mail, facsimile and telephone," which were directed toward Plaintiff in Ohio. Though Defendants were never physically present in Ohio, their actions form the facts that are at the heart of Plaintiff's case, thus satisfying the second *Mohasco* factor.

Finally, exercising personal jurisdiction over Epstein is reasonable.[7] Epstein may find litigation in Ohio burdensome. However, not only is there an inference of reasonability due to the satisfaction of the first two *Mohasco* factors, but also that Epstein's alleged conduct gives rise to claims for which Ashton Park, an Ohio Plaintiff, has a strong interest in obtaining legal relief, and for which Ohio has a strong interest as well.

In contrast, Ashton Park's Complaint alleges two causes of action against Epstein in his capacity as MKD's attorney

---

**6.** The Court notes that the copy of the contract attached to Plaintiff's Complaint contains several fax numbers at the top. These numbers include area codes for Ohio, New York and Nevada. The Nevada fax number was for Debcon of Nevada, Inc. Mortgage, the mortgage company applicants to MKD are required to use under the contract. In addition, the contract has several pen and ink changes initialed by Howe and Avram Lebor suggesting that its final terms were negotiated

using fax and perhaps other forms of interstate communication.

**7.** "A court must consider several factors in this context, including 'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies.' " *CompuServe*, 89 F.3d at 1268 (quoting *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169–70 (6th Cir.1988)).

who, under the contract, was to receive $ 10,000 to perform legal services necessary to execute the contract. Plaintiff asserts a claim of breach of fiduciary duty against him for failure to segregate the $ 10,000 payment, and refund it when he failed to provide said legal services. (Doc. No. 1, ¶¶ 67–72). Ashton Park also alleges that Epstein had negligently represented its interests. (Doc. No. 1, ¶¶ 76–78).

In *Hatem v. Ark Oil Group Ltd.*, No. 91–2251, 1993 WL 342845, at *1–3, 1993 U.S.App. LEXIS 23191, at *4–8 (6th Cir. Sept. 8, 1993) the court found that the nonresident defendants, an attorney and his firm, had not purposefully availed themselves of acting in the forum state for several reasons including: 1) the plaintiff could not have relied on any representations by the defendants who became involved only after the partnership between plaintiff and defendants' client was formed; 2) the defendants' functions were limited to traditional attorney functions; and 3) the majority of the brief telephone conversations and mail correspondence between the plaintiff and defendants were after the formation of the partnership and money transfers had taken place. Likewise, in *Friedman v. Speiser, Krause & Madole*, 56 Ohio App.3d 11, 565 N.E.2d 607, 610 (1988), the court affirmed dismissal of a New York law firm for lack of personal jurisdiction, finding the firm never physically came to Ohio, none of the material legal work occurred in Ohio, and the frequent mail and phone conversations with attorneys in Ohio "were not 'purposefully directed' to Ohio in a way that would lead the firm to realize it could be haled into court here." *See also Goldstein v. Opolka*, No 90AP–492, 1990 WL 178853, 1990 Ohio App. LEXIS 4992 (Ohio Ct.App. 10th Dist. Nov. 13, 1990) (finding insufficient contacts to exercise personal jurisdiction over a Florida attorney for the provision of legal services in Miami, who had never been to Ohio, and whose only contacts were by mail and phone, even though plaintiff had sent the attorney a $ 500 retainer).

Granted, Epstein asserts in his memorandum in support of his motion to dismiss, and reply, that he did perform legal services and that his role in the transaction at issue was limited to that of MKD's attorney. He contends that he was merely responsible for drafting the closing documents, that his involvement began only after Ashton Park and MKD completed negotiations, and that his communications were limited to Plaintiff's attorney via telephone and mail from New York. These assertions are not supported by way of affidavit or otherwise. Moreover, as set forth in Plaintiff's Complaint, the quality and character of Epstein's contacts, and role in the transaction with Ashton Park are distinguishable from those attorneys in *Hatem, Friedman* and *Goldstein*. He is purported to be both an owner of MKD as well as MKD's attorney. The Court is unable to delineate between his contacts with Ashton Park in these different roles, especially in light of the intimate role and the nature of the communications Ashton Park alleges in its Complaint. Therefore, exercising personal jurisdiction over Epstein is appropriate.

2. Ohio Long–Arm Statute

The Court now considers whether Epstein is subject to specific jurisdiction under the Ohio long-arm statute. O.R.C. § 2307.382. Specifically, his alleged fraudulent communications satisfy O.R.C. § 2307.382(A)(6), which states in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the persons:

    (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when

he might reasonably have expected that some person would be injured thereby in this state[.]

*See also FRC,* 2002 WL 31086104, at *4, 5, 2002 U.S. Dist. LEXIS 17559, at *11, 15 (holding that the alleged fraudulent communications satisfy the "causes tortious injury by an act or omission in this state" portions of the Ohio long-arm statute).

Further, "[i]f the exercise of personal jurisdiction also meets due process requirements, jurisdiction may be extended, under the long-arm statute [of Ohio]," to the other claims against Epstein because his conduct satisfies "one of the provisions of the long-arm statute." *FRC,* 2002 WL 31086104, at *4, 2002 U.S. Dist. LEXIS 17559, at *11–12 (citing *U.S. Sprint Comms. Co. v. Mr. K's Foods,* 68 Ohio St.3d 181, 624 N.E.2d 1048, 1052–53 (1994)). In *Sprint,* the Ohio Supreme Court stated:

> We hold that once an Ohio court acquires personal jurisdiction over a nonresident defendant for claims arising in Ohio, Civ.R. 18(A) permits joinder of related claims that do not arise in Ohio, as long as granting jurisdiction for all claims does not deprive defendant of the right to due process of law.[8]

*Sprint,* 68 Ohio St.3d 181, 624 N.E.2d at 1052. Thus, Epstein's motion to dismiss for lack of personal jurisdiction is denied.

### C. ASHSTON PARK'S MOTION FOR PRE-JUDGMENT ATTACHMENT

Ashton Park moves the Court for an order of prejudgment attachment against the Defendants' assets pursuant to O.R.C. § 2714.045, § 2715.03 and 2715.01. Fed. R.Civ.P. 64 provides that a district court may issue an order of attachment based upon the law of the state where it sits. Epstein contends that Plaintiff's motion

for prejudgment attachment should be denied because he neither owns property in Ohio nor is he subject to *in personam* jurisdiction. He also asserts that Plaintiff's affidavit accompanying its motion does not satisfy § 2715.03 and/or Plaintiff will not suffer irreparable harm as required under § 2715.045. Likewise, Defendants Avram Lebor, Michael Lebor, MKD Capital, Walter Kassuba, and Wendover Associate argue that Plaintiff's motion must be denied because they have no assets in Ohio, Plaintiff's affidavit accompanying its motion does not satisfy § 2715.03, and Plaintiff has failed to demonstrate probable cause in support of its motion as set forth in § 2715.045.

■ While Epstein's argument that Plaintiff's motion should be denied because he is not subject to *in personam* jurisdiction is without merit, the argument offered by Defendants that they have no property or assets for which the Court may issue an order of attachment is well taken. Ohio's attachment statutes apply to property located within its territorial boundary. *The Ohio Loan & Disc. Co. v. Siemen,* 142 Ohio St. 384, 52 N.E.2d 525, 527 (1943). *See also NCR Corp. v. Feltz,* No, 91–4011, 4033, 4058, 1993 1993 WL 11876, at *2, U.S.App. LEXIS 1402, at *7 (6th Cir. Jan. 21, 1993) (affirming the district court's grant of a preliminary injunction to the plaintiff to prevent the defendants' dissipation of assets because "Ohio's attachment statutes provide inadequate relief, as they do not apply to assets located outside of Ohio."); *Penrod v. Baltimore & Ohio R.R. Co.,* 64 Ohio App.2d 216, 412 N.E.2d 949, 952 (1979) (holding that the Ohio property of the defendant, a Maryland corporation, was a proper subject for attachment). The Court recognizes that "a debt has no fixed situs and may be reached in any

---

**8.** Civ.R. 18(A) states: "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal or equitable, as he has against an opposing party."

jurisdiction in which the person owing it may be found and served with summons, if the person to whom the debt was due could sue his debtor therefor in that jurisdiction." *Siemen,* 52 N.E.2d at 526. *See also Snetinger v. Lockley Mach. Co.,* 117 N.E.2d 172 (Ohio Ct.App. 8th Dist.1952).

In the case *sub judice,* Plaintiff's affidavit asserts in relevant part:

- When I transmitted my application/commitment fee to the Defendants, I did so by wire to a Fleet Bank account. I am informed and so I believe that the Defendants still maintain an account at the institution under the name of MKD Capital.

- I am informed and so I believe that the individual Defendants, Avi [Avram] Lebor, Michael Lebor and Martin Epstein own valuable real estate in the State of New York. On his financial statement, Avi [Avram] Lebor stated his own personal residence had a value in excess of $1 million.

- I have attached to this affidavit a recent financial statement of Avi [Avram] Lebor, representing net worth to be many millions of dollars' worth.

- My attorney has inquired of the management firms of 55 Perry Street and 57 Thompson Street, New York as to the Ownership interest of Avi [Avram] Lebor. I am informed and so I believe that these firms will not release this information to her without a release from Avi [Avram] Lebor. At no time however did these firms deny that Avi [Avram] Lebor had such an interest.

- I am informed and so I believe that the individual Defendants Don Klabin and Avi [Avram] Lebor hold ownership interests in the entities Radius Capital and Transpacific Gas. I have attached copies of statements of Zahn Associates representing the percentage interest of these defendants in these entities. I do not know the value of these interests but these same statements indicate that some unknown person paid $20 million for an interest in these firms. The Defendant Walter J. Kassuba, upon information and belief, intends to deposit an additional .$4.5 million in the entity Radius Capital, according to Zahn correspondence.

- An entity related to Radius Capital and Transpacific Gas, known as Conservative investment LTD possessed money of the individual Defendants and was ready to make the money available to fund committed loans.

- The Defendants have stated that they have funds and other property located in Scotland, India, Philippines, Israel, Papua New Guinea, New Zealand, London, Mexico, Lichtenstein, Zurich and Austrailia.

- I believe that the individual Defendants, principally Avi [Avram] Lebor, have ownership interests in the following entities because the same is referenced in financial statements and other documents and correspondence: American Floral Company LLC, .Wendover Associates, Treucom, AG, Radius Capital, Ltd., Transpacific Gas Ltd., Multi Factoring, Ag, Windsor Fund, 57 Thompson LLC and 55 Perry Corp.

The affidavit attached to Plaintiff's motion fails to identify property, assets or "debts" over which the Court has jurisdiction to issue an order of attachment. A Statement of Financial Condition of Avram Lebor accompanying the motion and affidavit is no more revealing.[9] Thus, Plaintiff's

---

**9.** This Statement of Financial Condition shows that the privately held companies in which it is alleged that Avram Lebor has

motion for prejudgment attachment is denied.[10]

### CONCLUSION

For the reasons stated above, Defendant Epstein's motion to dismiss for lack of personal jurisdiction (Doc. No. 10) is denied. Plaintiff's motion for prejudgment attachment (Doc. No. 27) is also denied.

IT IS SO ORDERED.

ownership interests are not even Ohio entities.

---

10. The Court need not consider Defendants' contentions that Plaintiff's affidavit attached to its motion fails to satisfy O.R.C. § 2715.03 and/or § 2715.045.