**ELLIPSIS, INC., Plaintiff,**

v.

**The COLORWORKS, INC., Defendant.**

No. 03–2939.

United States District Court,
W.D. Tennessee,
Western Division.

July 21, 2004.

John J. Heflin, III and John Marshall Jones of Bourland, Heflin, Alvarez & Minor, PLC, Memphis, TN, for Plaintiff.

Merrick L. Gross and Megan J. Knight of Ackerman Senterfitt in Miami, FL, Daniel W. Van Horn of Armstrong Allen, PLLC, Memphis, TN, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE AND DENYING DEFENDANT'S OBJECTIONS AS MOOT

BREEN, District Judge.

This is a diversity action brought by plaintiff Ellipsis, Inc., against defendant

Colorworks, Inc., for fraud, tortious interference with business relations, and violations of the Tennessee Consumer Protection Act ("TCPA"), Tenn.Code Ann. §§ 47–18–101–47–18–125. Defendant has filed a motion to dismiss or transfer venue to which responses have been submitted. The motion is now appropriate for disposition.

## FACTS

Ellipsis is a Tennessee corporation owned by Elizabeth Wade and has its principal place of business in Germantown, Tennessee. (Elizabeth Wade Affidavit at ¶¶ 2–3.) Ellipsis markets and sells accessories which include cellular telephone faceplates. (Wade Aff. at ¶ 4.) Since mid–1998, Ellipsis has held the exclusive license from Realtree, Inc., to produce and sell cellular telephone faceplates imprinted with the Realtree camouflage pattern. (Id. at ¶ 5.) In the fall of 1998, Ellipsis determined that Nokia had no registered patent on faceplates for certain models of its cellular telephones and contracted for and began to sell Realtree-imprinted faceplates which would fit Nokia telephones. (Id. at ¶ 6.)

In February 2001, at a trade show in Las Vegas, Lamie Haga of Colorworks met with Wade and explained that Nokia had registered a patent on its telephone faceplates and represented that Colorworks had been authorized by Nokia to "police" the production of faceplates which fit its telephones. (Id. at ¶ 7.) Haga told Wade that Nokia would sue Ellipsis if it continued to sell its telephone faceplates unless Ellipsis agreed to utilize Colorworks as its sole manufacturer. (Id.) He also made various representations about his company's production capacity and the potential demand for Ellipsis' faceplates. (Id. at ¶ 8.)

After that meeting, Wade discovered that Nokia had indeed patented its faceplates and, believing what Haga had told her, terminated its prior manufacturing relationship and agreed to permit Colorworks to manufacture Ellipsis' faceplates. (Id. at ¶ 9.) During the time of the commercial relationship between the parties, Colorworks shipped no fewer than five thousand faceplates to Ellipsis in Tennessee. (Id. at ¶ 19.) Furthermore, Colorworks has initiated a minimum of fifty communications including telephone calls, facsimile transmissions, and mailings, to Ellipsis in Tennessee. (Id. at ¶ 20.)

After their agreement, however, the business relationship between the parties deteriorated. Ellipsis alleges that Colorworks failed to provide timely production quotes, failed to manufacture the faceplates in requested quantities, and failed to meet scheduled delivery dates. (Id. at ¶¶ 10–16.) In one specific instance, Wal Mart requested that Ellipsis provide a quotation for thirty thousand faceplates, but when Ellipsis requested a firm delivery commitment from Colorworks, it told Ellipsis that it could not comply with such an order. (Id. at ¶ 14.) During this time, Haga continued to lead Ellipsis to believe that it was prohibited from switching to another manufacturer. (Id.) The plaintiff has since learned from Nokia representatives that Colorworks did not have any agreement with Nokia to "police" the production of faceplates. (Id. at ¶ 18.)

## ANALYSIS

*I. Personal Jurisdiction—FED. R. CIV. P. 12(b)(2)*

The defendant moves to dismiss the claims against it for lack of personal jurisdiction under Rule 12(b)(2), Federal Rules of Civil Procedure. The procedural mechanism for this motion is well-settled. *Theunissen v. Matthews*, 935 F.2d 1454,

1458 (6th Cir.1991). A plaintiff has the burden of proof to establish a prima facie case of jurisdiction, with the evidence before the court to be viewed in a light most favorable to the plaintiff. *Id.* at 1458–59. A two step analysis is undertaken to determine whether personal jurisdiction exists over a defendant. The court first examines the state's (Tennessee's) long-arm statute to see if it permits jurisdiction and then applies the Due Process Clause of the Fourteenth Amendment to determine if the exercise of personal jurisdiction would be constitutional. *See Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir.2000) ("The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements."). Only the second step is required here, because the Tennessee Supreme Court has interpreted its long-arm statute to apply coextensively and to the full range allowed by the Due Process Clause. TENN. CODE ANN. § 20–2–214(a)(6); *Payne v. Motorists' Mut. Ins. Cos.,* 4 F.3d 452, 455 (6th Cir.1993) ("the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical."); *Masada Investment Corp. v. Allen,* 697 S.W.2d 332, 334 (Tenn.1985) (observing that the Tennessee legislature "expanded the jurisdiction of Tennessee courts to the full limit allowed by due process.").

■ The court, therefore, applies the federal constitutional test of whether "the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen,* 935 F.2d at 1459. This analysis is governed by three elements:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* at 1459–60.

■ A defendant has fulfilled the first prong of the minimum contacts test

when the defendant's contacts with the forum state "proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir.1996) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). These requirements prevent a defendant from litigating in a jurisdiction on the basis of "random," "fortuitous," or "attenuated" contacts. *Id.* A defendant's physical presence in the forum state, however, is not required. *Id.* at 1264; *see also Koch v. Local 438, United Autoworkers Union,* No. 00–6200, 54 Fed.Appx. 807, 809–12, 2002 WL 31873481, at *2–5 (6th Cir.2002) (discussing personal jurisdiction for two separate defendants who had written letters affecting the plaintiff, neither of whom had physical presence in the forum state).

■ Ellipsis suggests that defendant's alleged misrepresentations to it, along with the resulting effect on its business and subsequent shipment of Colorworks' products into Tennessee, satisfy the first element of the test for personal jurisdiction. The court agrees and finds that the defendants formed a substantial connection with Ellipsis, a Tennessee corporation, and should reasonably have anticipated the

plaintiff suing them before a Tennessee court. *See Neal v. Janssen,* 270 F.3d 328, 332 (6th Cir.2001) (finding that phone and fax transmissions into the state were enough contact for purposes of personal jurisdiction); *Nicholstone Book Bindery v. Chelsea House Publishers,* 621 S.W.2d 560 (Tenn.1981) (finding purposeful availment and minimum contacts under circumstances similar to those herein, even where a defendant never entered the forum state); *Southland Express v. Scrap Metal Buyers of Tampa,* 895 S.W.2d 335, 338–39 (Tenn.Ct.App.1994) (stating that a forum may exercise personal jurisdiction over a nonresident defendant who "purposefully directs" his activities towards forum residents and exercising that jurisdiction over a nonresident business which had a "continuing relationship" with a Tennessee corporation). Even one contact with a forum state, if tortious or otherwise illegal, can provide the foundation for personal jurisdiction over that defendant. *See Lewis v. Fresne,* 252 F.3d 352, 358–59 (5th Cir.2001) ("A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted."); *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 910 n. 3 (6th Cir.1988) (noting that the Supreme Court allowed personal jurisdiction over a defendant based on one letter in *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 221–23, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

Plaintiff has also satisfied the second prong of the minimum contacts test because the cause of action arises directly from the defendant's actions affecting Tennessee. By alleging a fraud claim with regard to communications directed towards Ellipsis, the cause of action herein clearly arises from the defendant's acts directed towards a resident of the state. Furthermore, the defendant's shipments of a product into the state, as well as its failure to ship products to the state, are clearly relevant in considering aspects of the plaintiff's tort claims.

■ Finally, an inference arises that the third prong of the minimum contacts test is met when the first two prongs are satisfied. *See First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1126 (6th Cir.1982) (noting that only unusual cases will outweigh this inference); *Ashton Park Apts. v. Lebor,* 252 F.Supp.2d 539, 546 (N.D.Ohio 2003) (discussing the minimum contacts factors). Here, the exercise of jurisdiction over the defendants is reasonable. Though it may be somewhat burdensome on defendant to defend this litigation, this burden is "outweighed by Tennessee's legitimate interest in protecting the interests of its residents and businesses." *First Tennessee Nat'l Corp. v. Horizon Nat'l Bank,* 225 F.Supp.2d 816, 822 (W.D.Tenn.2002). The court therefore finds that plaintiff has made the required showing and exercises personal jurisdiction over Colorworks.

## II. Failure to State a Claim—*Fed. R. Civ. P. 12(b)(6)*

The defendant next moves the court to dismiss each of plaintiff's causes of action under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint and all factual allegations must be construed in a light most favorable to the plaintiff. *E.g. Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir.2002). Plaintiff, however, must include more than merely bare or conclusive legal assertions. The complaint "must contain either direct or inferential allegations respecting all the material ele-

ments to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops,* 859 F.2d 434, 436 (6th Cir.1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984)).

*A Fraud*

 The defendant first suggests that Ellipsis failed to state a claim for fraud. In Tennessee, the elements of fraud are:

> (1) an intentional misrepresentation with regard to a material fact, (2) knowledge of the ... falsity—that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise."

*Stacks v. Saunders,* 812 S.W.2d 587, 592 (Tenn.Ct.App.1990) (citations omitted). Colorworks suggests that there are no allegations concerning its knowledge of falsity in its quotations of production projections to Ellipsis. Colorworks also argues that Ellipsis could not have reasonably relied on its representation that it had a relationship with Nokia. Neither of these arguments is persuasive.

Ellipsis' complaint outlined several potential misrepresentations by Colorworks for which plaintiff could prove a set of facts showing that they were "knowingly" or "recklessly" stated. The complaint states that Haga "falsely represented to Wade that Nokia had authorized Colorworks to police the production of faceplates which fit Nokia telephones."

(Compl. at ¶ 22.) He also "falsely represented that Nokia would not permit Ellipsis to continue selling the faceplates it was then selling" and "that Nokia would allow Ellipsis to sell faceplates which fit Nokia telephones only if they were manufactured by Colorworks." (*Id.*) The complaint strongly indicates that these averred misrepresentations were uttered with the proper scienter for fraud. Furthermore, the complaint creates an inference that Colorworks either "knowingly" or "recklessly" mislead Ellipsis as to its projections of faceplate production in a deliberate scheme to injure it. (*See id.* at ¶¶ 8, 10–12, 14–19, 26, 29.)

Colorworks' argument that Ellipsis could not possibly have reasonably relied on its purported statement regarding a relationship with Nokia is more appropriate for summary judgment, rather than the failure to state a claim motion currently before the court. The complaint clearly states that Ellipsis acted to its detriment "[b]ased on the reasonable belief that what Haga had told Wade was true." (*Id.* at ¶ 25.) The reasonableness of Wade's belief is an issue of fact which cannot be weighed on defendant's 12(b)(6) motion. *See, e.g., Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995) (explaining that for a Rule 12(b)(6) motion to dismiss for failure to state a claim, a "district court must ... accept all of the [plaintiff's] factual allegations as true.") Defendant's 12(b)(6) objections to plaintiff's fraud claim are without merit.

## B. *Intentional Interference with Business Relations*

 Colorworks next argues that Ellipsis has failed to state a claim for intentional interference with business relations. To state such a claim, plaintiff must allege

(1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach of termination of the business relationship; (4) the defendant's improper motive or improper means ...; and finally, (5) damages resulting from the tortious interference.

*Trau–Med of America v. Allstate Ins. Co.,* 71 S.W.3d 691, 701 (Tenn.2002) (footnotes, citation, and emphasis omitted). The defendant argues that plaintiff has failed to allege an improper motive for defendant's interference or that defendant employed improper means to carry out its interference. It also alleges that plaintiff has failed to plead facts which would establish that it had a valid business relation. Neither of these criticisms has merit.

■ Improper motive "is dependent on the particular facts and circumstances of a given case," but specifically requires a finding that "the defendant's predominant purpose was to injure the plaintiff." *Trau–Med,* 71 S.W.3d at 701 n. 5. The definition of improper means specifically includes "misrepresentation or deceit." *Id.* The court has examined the complaint and finds that it contains allegations which address these elements. The allegations of improper motive originate from Colorworks' purported scheme to injure the plaintiff by taking its clients. (*See* Compl. at ¶ 18–19; *see also* Def.'s Reply Memo. at 4 ("[Colorworks'] conduct was motivated only by the desire to obtain a larger market share for itself at the expense of its competitor, Ellipsis.").) Allegations of improper means derive from plaintiffs fraud allegations which contain claims of misrepresentation or deceit.

There are also sufficient allegations that Ellipsis had an existing business relationship. Colorworks once again appears to confuse the standard for a Rule 56 motion with its current 12(b)(6) motion by suggesting that Ellipsis has not plead enough facts demonstrating that its business relations were entitled to protection. (Def.'s Mot. at 13.) It is not necessary at this stage for plaintiff to plead all facts necessary to prove each element of its claim. Instead, plaintiff must simply give "a short and plain statement of the claim showing that the pleader is entitled to relief." *Baxter v. Rose,* 305 F.3d 486, 490 (6th Cir.2002) (quoting Fed.R.Civ.P. 8(a)(2)). The complaint adequately notifies the defendant of the relevant existing business relationship with which it claims Colorworks interfered. (Compl. at ¶¶ 6–7, 18–19, 27–29.) Defendant's Rule 12(b)(6) objections to plaintiff's intentional interference claim must fail.

### C. Tennessee Consumer Protection Act

■ Colorworks last contends that Ellipsis has failed to state a claim under the TCPA because there was no unequal bargaining power between the parties. The defendant cites *Floyd v. Club Sys. of Tennessee,* No. 01–A–01–9807–CV–00399, 1999 WL 820610 (Tenn.Ct.App. July 20, 1999), and *Twitty v. Young,* No. 03A01–9801–CH–00031, 1998 WL 453681 (Tenn.Ct.App. Aug. 6, 1998), for the proposition that "cognizable claims under the TCPA normally involve one party's misuse of superior knowledge or unequal bargaining power to the detriment of the other party." (Def.'s Mot. at 13.) These cases, however, do not support that proposition. Neither *Floyd* nor *Twitty* address superior knowledge or unequal bargaining power as elements necessary to establish a violation of the TCPA. *Floyd* is a case which references only the TCPA sections relevant to

health clubs. *Floyd,* 1999 WL 820610, at *4. *Twitty* involves primarily a fraud claim in which the court found no knowing misrepresentation by the defendant and only mentions that plaintiff failed to prove an unfair or deceptive act or practice under the TCPA. *Twitty,* 1998 WL 453681, at *5. Moreover, these considerations appear irrelevant for any analysis of the specific unfair or deceptive acts of which the plaintiff complains. For example, bargaining power would be immaterial for plaintiff's claim that the defendant disparaged its goods, services, or business by false or misleading representations of fact. (*See* Compl. at ¶ 33.) Because there is no indication that the plaintiff is required to plead unequal bargaining power or superior knowledge as a element of a TCPA claim, the court denies defendant's motion to dismiss.

### III. Motion to Transfer

■■■■ Defendant alternatively requests that this action be transferred to the United States District Court for the Middle District of North Carolina under 28 U.S.C. § 1404(a). This statute provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The district court has a broad discretion under § 1404(a)," *Fannin v. Jones,* 229 F.2d 368, 370 (6th Cir.1956) (per curiam), but the plaintiff normally has the right to select its forum. *See, e.g., Carborundum Co. v. Bay Fabricators, Inc.,* 461 F.Supp. 437, 439–40 (E.D.Tenn. 1978) (holding that defendant had the burden of proof on its motion to transfer because plaintiff ordinarily may select its forum). A district court may consider several factors when deciding whether to transfer a case under § 1404, including the private interest of the parties, the relative

case of access to sources of proof, availability of compulsory process for unwilling witnesses, the costs of obtaining attendance of willing witnesses, the relative ability of litigants to bear expenses in any particular forum, public interest concerns, and other practical problems affecting the case. *See, e.g. Thomas & Betts Corp. v. Hayes,* 222 F.Supp.2d 994, 997 (W.D.Tenn. 2002); *Leopard Roofing Co. v. Asphalt Roofing Indus. Bureau,* 190 F.Supp. 726, 730 (E.D.Tenn.1960).

■■■ Colorworks' primary argument for transfer is that no events relevant to this lawsuit occurred in Tennessee. (Def.'s Mot. at 15.) This contention is directly disputed by the plaintiff's statements that the defendant shipped (and failed to ship) its product into Tennessee and made several fraudulent communications into the state. (Compl. at ¶¶ 19–20.) Even if true, the absence of events would be unhelpful for purposes of deciding whether to transfer the action. More relevantly, the defendant suggests that "[a]ll of the relevant sources of proof, documents, and witnesses are located in North Carolina." (Def.'s Mot. at 15.) This contention appears on its face to be untrue and indeed is counterbalanced by Ellipsis' claim that many relevant records will be found at its place of business in Memphis and that several important witnesses are in Tennessee, Georgia, or Arkansas. (Pl.'s Response at 18–19.) Because the defendant has not satisfied its burden of showing that the proposed forum is more convenient, *see, e.g., Forward Air v. Dedicated Xpress Services,* No. 2:01–CV–48, 2001 WL 34079306, at *3 (E.D.Tenn. Dec. 13, 2001), its motion to transfer is denied.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss or transfer is DENIED.

Accordingly, defendant's May 14, 2004, objection to the magistrate judge's order of May 5, 2004, which denied defendant's motion for a protective order or to stay discovery is also DENIED as moot.