ANILAS, INC., APPELLANT, *v.* KERN ET AL., APPELLEES.

[Cite as Anilas, Inc. *v.* Kern (1987), 31 Ohio St. 3d 163.]

(No. 86-152—Decided July 8, 1987.)

*Knepper, White, Arter & Hadden, R. Douglas Wrightsel* and *William A. Adams,* for appellant.

*Weasel & Brimley Co., L.P.A.,* and *John F. Kostyo,* for appellees.

*Per Curiam.* The issue to be determined is whether Elvira Kern established sufficient minimum contacts with the state of Kansas to render her amenable to the *in personam* jurisdiction of Kansas courts. The facts presented show that she did. We therefore reverse the determination of the court of appeals.

It is well-established that "'* * * due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310, 316. Ordinarily, this requires that a party "purposefully * * * [avail] itself of the privilege of conducting activities within the forum State * * *." *Hanson* v. *Denckla* (1958), 357 U.S. 235, 253. In judging minimum contacts, a court properly focuses on "the relationship among the defendant, the forum, and the litigation* * *." *Shaffer* v. *Heitner* (1977), 433 U.S. 186, 204.

Courts have consistently held that foreseeability is one of the primary factors to be considered in determining whether there are sufficient minimum contacts. "'* * * [T]he foreseeability that is critical to due process analysis * * * is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, 297. Thus, where the defendant "has created 'continuing obligations' between himself and residents of the forum, *Travelers Health Assn.* v. *Virginia* [1950], 339 U.S. at 648, * * * he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws, it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State." (Emphasis *sic.*) *Burger King Corp.* v. *Rudzewicz* (1985), 471 U.S. 462, 475-476.

The above cases indicate that the focus of analysis ought to be whether one *purposely* established contacts with the forum state. This invariably requires an analysis of factors peculiar to the individual transaction. In the case here, the locus of breach clause contained in the contract, while not dispositive, is a significant factor. It evidences the contemplated agreement of the parties to it, and is ordinarily not defeated by the mere assertion, after the fact, that one of those who signed did so without reading the agreement. Appellees rely greatly upon testimony that Mrs. Kern had no part in any negotiations and that no negotiations occurred outside Ohio. Such factors would be of much greater significance, carrying very

different implications, in a case where an unsophisticated individual dealt with a national corporation. However, the case before us arises in a corporate setting and Mrs. Kern's actions are not consistent with, nor may they be presumed to be, those of one ignorant of business affairs and consequential legal obligations.

The facts before us reveal a transaction between two corporations. Mrs. Kern was the secretary of D.K.E., Inc. She signed the agreement at issue as a co-guarantor and indicated her office by her own handwriting. Also, she signed the agreement as an individual shareholder to "jointly and severally guarantee performance in full * * *." Furthermore, the trial court found that "Elvira Kern knew she was dealing with a Kansas corporation at the time she entered into the lease agreement."

We therefore have before us a corporate officer, who signed an agreement in her capacity as guarantor and shareholder and knew the corporate headquarters of the other contracting party to be located in a foreign state. When coupled with the terms of the agreement itself, the inescapable conclusion must be, as the trial court also found, "that * * * Kern should have reasonably expected that an action could be brought against her in Kansas * * *." Such knowing creation of ongoing obligations with a Kansas corporation, it to provide equipment in Ohio and D.K.E. to deliver money to the corporate headquarters in Salina, Kansas, created minimum contacts under the facts before us. *Burger King Corp., supra,* at 487.

Having found amenability to *in personam* jurisdiction, it now remains only to inquire whether such jurisdiction was perfected by service of process. After hearing conflicting evidence upon the issue, the nature of which made witness demeanor crucial, the trial court found as a factual determination that: "On October 19, 1983, defendant Elvira Kern was served with a petition from the District Court of Salina [*sic*] Kansas." Having perfected such jurisdiction, final judgment being subject only to that relief customarily provided in Kansas courts, we find that the full faith and credit provisions of the United States Constitution require that Ohio courts enforce the judgment of the District Court of Saline County, Kansas.

Accordingly, we reverse the judgment of the court of appeals and remand the cause to that court for disposition of the remaining issues.

*Judgment reversed and cause remanded.*

Patton, Holmes, Wright and H. Brown, JJ., concur.

Douglas, J., concurs in judgment only.

Sweeney, Acting C.J., and Locher, J., dissent.

Sweeney, J., sitting for Moyer, C.J.

Patton, J., of the Eighth Appellate District, sitting for Sweeney, J.

LOCHER, J., dissenting. I cannot agree that Elvira Kern has sufficient minimum contacts with the state of Kansas to enable a Kansas court to exercise personal jurisdiction over her. Accordingly, I dissent.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a defendant from having to defend a suit in a distant or inconvenient forum absent sufficient "minimum contacts" between the defendant and the state in which the forum is located. See *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310.

In *Burger King Corp.* v. *Rudzewicz* (1985), 471 U.S. 462, the United States Supreme Court outlined the standards for evaluating the existence of sufficient minimum contacts. Part of its holding is as follows: "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts with the other party's home forum, we believe the answer clearly is that it cannot." *Id.* at 478. The Supreme Court then listed several additional factors to be considered, namely, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.* at 479.

Applying these factors, it is clear that sufficient minimum contacts between Elvira Kern and Kansas are lacking here. She has never been to Kansas. The sole contact she has with that state is embodied in the contract she signed, which was negotiated in and to be performed exclusively in Ohio. She was not involved in the prior negotiations between her husband and Anilas. She did not contemplate the future consequences or the terms of the contract, because she did not read it. Consequently, she was unaware of the clause providing that any breach would be deemed to take place in Kansas. The only thing she contemplated was that she was signing the contract. In my view, such contacts as she has with Kansas as a result of signing the contract unread are "far too attenuated" to confer *in personam* jurisdiction over the defendant in a Kansas court. See *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, 299.

The majority chooses to ignore the aforementioned factors, and focuses instead on the fact that Elvira Kern signed the contract as a co-guarantor and indicated her office as secretary of her husband's corporation. The majority then concludes that she should reasonably have expected that she could be sued in a Kansas court. I disagree. In *Burger King Corp., supra,* the Supreme Court made it clear that the mere existence of a contract does not establish sufficient minimum contacts between one party and the forum of the other, out-of-state party. Thus, the mere fact that she signed the contract is irrelevant for the purpose of determining whether Kansas is the proper forum. What is relevant is that she had no part in the negotiation of the contract, that she did not read the contract, and that as a result, she had no reason to believe that signing the contract would render her amenable to suit in a Kansas court.

Finally, the majority correctly points out that the place of the breach,

as established by a contractual provision, is insufficient in and of itself to establish sufficient minimum contacts between Elvira Kern and the state of Kansas. Such a provision simply does not amount to an agreement that Kansas is the proper forum, or that Kansas law will apply, in the event of a breach. The parties could have included a choice-of-forum or choice-of-law provision if they had intended such a result, but they chose not to do so here.

The contacts between Elvira Kern and the state of Kansas are few and far between. I would affirm this court's original holding in this case, as expressed in *Anilas, Inc.* v. *Kern* (1986), 28 Ohio St. 3d 165, 28 OBR 257, 502 N.E. 2d 1025, that the courts of this state should not give full faith and credit to the decision of the District Court of Saline County, Kansas. I therefore dissent from today's holding to the contrary.

SWEENEY, Acting C.J., concurs in the foregoing dissenting opinion.