The Committee Comment to R.C. 2917.11(B)(2) states, in pertinent part:

"* * * Former law merely prohibited being found in a state of intoxication, whereas this section is aimed at particular conduct rather than at the condition. Thus, it is not a violation of this section for a person to get drunk and pass out in his own home, provided he doesn't unreasonably offend others or pose a danger to himself or another person. It is a violation if he imbibes too much and, while in public or with others, becomes offensively noisy, coarse, or aggressive, or becomes uncontrollably nauseated between the entree and dessert. It is also a violation if, when alone and drunk or under the influence of drugs, he attempts a tightrope act on a bridge parapet or curls up to sleep in a doorway in freezing weather."

In our view, the facts in the case before us are much closer to the facts in *Lorain* v. *Wright* (1983), 11 Ohio App. 3d 200, 11 OBR 296, 463 N.E. 2d 1298, than they are to performing "a tightrope act on a bridge parapet" or to curling "up to sleep in a doorway in freezing weather."

In *Lorain* v. *Wright, supra,* the defendant was found alone, asleep, in an inoperable car. The court declined to find that the defendant's act of sleeping in his car created a risk of physical harm to him.

Similarly, we are not disposed to find that Parks' act of sitting in the passenger seat of a parked car, albeit in an intoxicated state, created the kind of risk of physical harm to himself that is intended to be encompassed by R.C. 2917.11(B)(2).

The state argues that Parks exposed himself to an unacceptable risk of physical harm by being intoxicated in an area where, once law enforcement officers had arrested the driver and towed the vehicle in which Parks was a passenger, Parks would be left "to wander about rural Montgomery County in the early morning hours." We conclude that this is not the kind of foreseeable consequence envisioned by the statute. A contrary conclusion would hold that anyone who, while intoxicated, becomes a passenger in a car, has thereby exposed himself to an unacceptable risk of physical harm in the event that the driver of the car may commit an offense and be arrested, with the car then being towed by the police. We conclude that the statute should be construed more narrowly, as suggested by the Committee Comment.

In our view, the state's evidence, even when viewed in a light most favorable to the state, is not sufficient to make out a violation of R.C. 2917.11(B)(2). Accordingly, Parks' First, Second, and Third Assignments of Error are sustained.

### III

Parks' First, Second, and Third Assignments of Error having been sustained, the judgment of the trial court will be reversed and Parks will be ordered discharged.

*Judgment reversed.*

BROGAN and GRADY, JJ., concur.

---

FRIEDMAN ET AL., APPELLANTS, *v.* SPEISER, KRAUSE & MADOLE, P.C., APPELLEE.

(No. 54312—Decided
October 24, 1988.)

*Jack M. Schulman,* for appellants.
*Craig Spangenberg,* for appellee.

DYKE, J. Appellant law firm Fried-man & Chenette Co., L.P.A. appeals from the trial court's orders quashing service of process and dismissing the complaint on the grounds that the court lacked jurisdiction over the person of appellee law firm Speiser, Krause & Madole, P.C. ("SKM"), a New York professional corporation. The trial court had conducted a hearing where it accepted evidence by way of affidavits, depositions and oral testimony.

The facts giving rise to the filing of this lawsuit have their beginnings near St. Croix of the United States Virgin Islands. In June 1980, a United States Navy helicopter crashed approximately three miles from St. Croix; all eight persons aboard were killed. Among the victims were Joseph R. Coot, an Ohio resident, and two Puerto Rican civilians employed by the Radio Corporation of America ("RCA"): Zayas and Scheerer.

Coot's widow retained Friedman & Chenette, a Cleveland firm, to pursue possible tort claims against the United States, United Technologies Corporation (the manufacturer of the helicopter) and General Electric Corporation (the manufacturer of the helicopter engines). Realizing it lacked expertise in the complex problems of aviation litigation, Friedman & Chenette telephoned SKM, a firm specializing in such litigation.

SKM expressed an interest to act as co-counsel for the Coot claim, but indicated that representation of a single crash victim would not be profitable. SKM urged Friedman & Chenette to contact the estates of the remaining crash victims in order to convince them to join in the Coot litigation.

Attorney Chenette flew to Puerto Rico and spoke with representatives of the Zayas and Scheerer estates. Chenette learned that those families had retained the services of David Cobin, a New Jersey lawyer. Chenette returned to Cleveland and contacted Cobin. On June 9, 1981, Friedman & Chenette and Cobin met at SKM's New York City offices.

At that meeting, the attorneys orally agreed to a co-counsel arrangement although they had not yet received approval from the clients. Friedman & Chenette prepared and mailed two identical contracts, one for the Zayas claim and one for the Scheerer claim. The terms of the contracts, however, expressly excluded Cobin. A new draft was prepared, naming Cobin, SKM and Friedman & Chenette as co-counsel. The Scheerer and Zayas cases were divided into two groups: Friedman & Chenette would share the attorney fees generated against RCA and United Technologies only, and not to fees generated, if any, from the United States government under the Federal Tort Claims Act. It was anticipated that SKM would handle the liability aspects of the litiga-

tion; Cobin would handle the damage aspects.

A fee contract was signed by the attorneys and then approved by the clients on August 31, 1981. On April 23, 1982, an executed copy of the Zayas and Scheerer retainer agreements, specifically incorporating the letter agreement of June 11, 1981, was returned to Friedman & Chenette and signed by it. By that time, lawsuits against United Technologies and General Electric had been filed in the United States District Court for the Eastern District of Michigan. Those suits were later transferred to the District of Connecticut.

The anticipated claim under the Federal Tort Claim Act was not filed. Instead, suit was brought under the Suits in Admiralty Act and the Public Vessels Act. These actions were filed in the District of Puerto Rico and were transferred to the District of Connecticut under federal rules governing multidistrict litigation.

The suits against the manufacturers were settled and attorney fees were disbursed without incident. The claims against the United States were settled, with SKM and Cobin splitting the twenty-five percent contingent fee per the June 11, 1981 agreement. Friedman & Chenette objected, arguing that the agreement excluded it only from attorney fees recovered under the Federal Tort Claims Act. Since the Zayas and Scheerer estates recovered under the Suits in Admiralty Act, Friedman & Chenette maintained that it was entitled to a proportionate share of the attorney fees.

Friedman & Chenette filed this action in Ohio against SKM seeking a declaratory judgment of its rights under the fee sharing agreements, an accounting of those fees held by SKM, and asserting a contract claim. SKM filed a special appearance and moved to dismiss the complaint for lack of personal jurisdiction pursuant to Civ.

R. 12(B)(2) and to quash service of process made pursuant to Civ. R. 4.3(A)(1). Following an evidentiary hearing, the trial court granted both motions. Friedman & Chenette appeals, assigning as error the granting of the motion to dismiss.

Out-of-state service of process made in this case was valid, if at all, under Civ. R. 4.3(A)(1), relating to transacting any business in the state of Ohio. In order to establish jurisdiction over a person not within the territory of the forum state, fair play and substantial justice require that certain "minimum contacts" be established. *International Shoe Co.* v. *Washington* (1945), 326 U.S. 310, 319; *Anilas, Inc.* v. *Kern* (1986), 28 Ohio St. 3d 165, 28 OBR 257, 502 N.E. 2d 1025 ("*Anilas I*"), reversed on rehearing (1987), 31 Ohio St. 3d 163, 31 OBR 366, 509 N.E. 2d 1267 ("*Anilas II*"); *Wainscott* v. *St. Louis-San Francisco Ry. Co.* (1976), 47 Ohio St. 2d 133, 1 O.O. 3d 78, 351 N.E. 2d 466 paragraph one of the syllabus. The requirement of minimum contacts reflects the Due Process Clause's protection of an individual's liberty interest in not being subject to binding judgment of a forum with which no contacts, ties or relations have been established. *International Shoe Co.* v. *Washington, supra,* at 319; *Burger King Corp.* v. *Rudzewicz* (1985), 471 U.S. 468, 471-472.

While the plaintiff is entitled to have the factual allegations sustaining personal jurisdiction construed in its favor, plaintiff must nevertheless first plead or otherwise make a prima facie showing of jurisdiction over defendant. *Jurko* v. *Jobs Europe Agency* (1975), 43 Ohio App. 2d 79, 85, 72 O.O. 2d 287, 291, 334 N.E. 2d 478, 482. Since matters of jurisdiction are often not apparent on the face of the summons or pleadings, evidentiary hearings are an appropriate vehicle for resolving such issues. In deciding the merits of the defense, the court may hear the matter

on affidavits, depositions, interrogatories, or receive oral testimony. *Giachetti* v. *Holmes* (1984), 14 Ohio App. 3d 306, 14 OBR 371, 471 N.E. 2d 165. If an evidentiary hearing is conducted, plaintiff has the burden of proving jurisdiction by a preponderance of the evidence. *Id.*

The foreseeability "critical to due process analysis * * * is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. * * *" *World-Wide Volkswagen Corp.* v. *Woodson* (1980), 444 U.S. 286, 297; *Anilas II, supra,* at 164, 31 OBR at 367, 509 N.E. 2d at 1269.

In this case, SKM was a "passive" defendant; that is, SKM did not physically appear in Ohio and was first solicited by plaintiff. *Id.; Monroe Distributing Co.* v. *McClung* (Mar. 31, 1983), Cuyahoga App. No. 44991, unreported; see, also, *NRM Corp.* v. *Pacific Plastic Pipe Co.* (1973), 36 Ohio App. 2d 179, 65 O.O. 2d 261, 304 N.E. 2d 248 (brief appearance in forum state by defendant's agent insufficient to establish minimum contacts where defendant had not initiated original transaction); contrast *Barile* v. *Univ. of Virginia* (1981), 2 Ohio App. 3d 233, 2 OBR 254, 441 N.E. 2d 608 (personal jurisdiction properly exercised where agents of an out-of-state university solicit student-athletes and enter forum for recruiting purposes); *Burger King Corp.* v. *Rudzewicz, supra* (Michigan franchisee who deliberately reached out beyond his state of residence and negotiated with a Florida franchisor for purchase of a long-term franchise, who entered into a carefully structured twenty-year relationship which envisioned continuing contact with Florida, and who accepted regulation from franchisor and was required to make long-term payments to Florida headquarters of franchisor was subject to long-arm jurisdiction in Florida). Moreover, the evidence failed to show that the anticipated course of dealing fostered by Friedman & Chenette was to occur in Ohio. Thus, while there were frequent mail and telephone communications between New York and Ohio, these commercial contacts were not "purposefully directed" to Ohio in a way that would lead SKM to realize it could be haled into court here. *Burger King Corp.* v. *Rudzewicz, supra,* at 476; compare *Keeton* v. *Hustler Magazine, Inc.* (1984), 465 U.S. 770 (defendant's regular circulation of magazines in forum state sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine).[1] In fact, none of the substantive legal work relating to the Zayas and Scheerer cases, that is, filing of pleadings, motion practice, discovery and settlement discussions, took place in Ohio. The situs of the underlying fee-sharing arrangement itself was not shown by a preponderance of the evidence to be in Ohio.

On the facts presented in this appeal, we conclude that Friedman & Chenette failed to establish personal jurisdiction by a preponderance of the evidence. Accordingly, the trial court properly dismissed the complaint and quashed service of process. The assigned error is overruled.

*Judgment affirmed.*

KRUPANSKY, P.J., and MATIA, J., concur.

---

[1] While SKM did regularly mail a "tort newsletter" to various law firms, present and former clients, and the tort trial bar, these contacts were insufficient to conclude that there was a " 'relationship among the defendant, the forum, and the litigation' " sufficient to extend long-arm jurisdiction. *Keeton* v. *Hustler Magazine, Inc., supra,* at 775, quoting *Shaffer* v. *Heitner* (1977), 433 U.S. 186, 204.