**DAHLHAUSEN, Appellant and Cross–Appellee,**

v.

**ALDRED et al., Appellees and Cross–Appellants.**

[Cite as *Dahlhausen v. Aldred,* 187 Ohio App.3d 536, 2010-Ohio-2172].

Court of Appeals of Ohio,
Twelfth District, Clermont County.

Nos. CA2009–08–049 and CA2009–08–053.

Decided May 17, 2010.

538

Kenneth G. Hawley, for appellant and cross-appellee.

Gary D. Ostendarp, for appellees and cross-appellants.

YOUNG, Judge.

{¶ 1} Plaintiff-appellant and cross-appellee, Robert D. Dahlhausen, D.V.M., appeals the decision of the Clermont County Court of Common Pleas dismissing his complaint against defendant-appellee and cross-appellant Stephen W. Aldred, M.D., for lack of personal jurisdiction, and dismissing his complaint against defendant-appellee and cross-appellant Research Avian Laboratory, Inc. ("Avian"), and all but one of his claims against defendant-appellee and cross-appellant, Ernest Colaizzi, under the doctrine of forum non conveniens.

{¶ 2} Dahlhausen, a Clermont County, Ohio resident, originally filed a complaint in the trial court against Aldred and Colaizzi in October 2007. In July 2008, Dahlhausen filed an amended complaint adding Avian as a defendant. Aldred and Colaizzi are both Texas residents; Avian is a Texas corporation. The complaints alleged several contract and tort claims arising from a transfer of ownership interest in Research Associates Laboratory, Inc. ("RAL") to Aldred and Colaizzi.[1]

{¶ 3} The facts giving rise to Dahlhausen's complaints against all three defendants [2] are as follows: In 1991, Dahlhausen formed an Ohio corporation to

---

1. Aldred died on August 31, 2008. His estate was subsequently substituted as a defendant pursuant to Civ.R. 25(A)(1).

2. For readability purposes, Aldred, Colaizzi, and Avian will be referred to as the defendants when referred to as a group, and by Aldred, Colaizzi, and Avian when referred to separately.

manufacture and distribute avian food products and supplements and to conduct avian diagnostic research and testing. The name of the corporation was later changed to RAL. In 1992, Steven Radabaugh, D.V.M., joined RAL as a partner; Dahlhausen and Radabaugh each owned 50 percent of RAL. Over the next nine years, Dahlhausen and Radabaugh built a successful business and a solid reputation in the field of animal research and diagnostic testing. In 2001, Radabaugh sought to leave RAL; Dahlhausen began investigating selling Radabaugh's ownership interest in RAL to another partner or partners.

{¶ 4} The parties, casual acquaintances sharing an interest in avian research, agree that they began discussing the possible involvement of Aldred and Colaizzi in RAL in 2001. The parties disagree, however, as to who made the initial overtures. Dahlhausen claims that during one of their regular phone conversations (discussing aviculture and avian matters), Colaizzi approached him to inquire as to whether he and Aldred might purchase Radabaugh's 50 percent interest in RAL. By contrast, Aldred and Colaizzi claim that Dahlhausen first contacted Colaizzi by telephone in Texas, informing him of Radabaugh's desire to leave RAL and gauging his interest in buying Radabaugh's ownership interest. Interested but undercapitalized, Colaizzi recruited Aldred to join in the purchase.

{¶ 5} Negotiations ensued. Here as well, the parties present differing versions. Dahlhausen claims that over the next several months, Colaizzi, on his behalf and Aldred's behalf, contacted Dahlhausen in Ohio almost daily by telephone and e-mails; the majority of these contacts dealt with the purchase of Radabaugh's interest in RAL. In August 2001, while negotiations were ongoing, Aldred visited RAL and its laboratory and viewed a PowerPoint presentation. Dahlhausen claims that he prepared the PowerPoint presentation at Colaizzi's request to promote RAL and its lab and to pique Aldred's interest in RAL.

{¶ 6} By contrast, Aldred claims that he merely accepted Dahlhausen's open invitation to visit RAL while transporting his son to college at Denison University. The visit was simply to satisfy his personal curiosity about the lab's operations, included Radabaugh in attendance, and dealt solely with matters related to the lab facilities and pathology. No discussions regarding the lab's finances or any other aspects of a sale or purchase took place during the visit. In fact, Aldred claims that prior to September 2001, he had never talked to Dahlhausen about Radabaugh's interest in RAL.

{¶ 7} The record indicates that Radabaugh was never told that Aldred and Colaizzi were interested in buying his ownership interest in RAL. Dahlhausen claims that Aldred and Colaizzi did not want Radabaugh to know about their desire to buy his interest. Aldred and Colaizzi claim that Dahlhausen had specifically told them not to contact Radabaugh about purchasing his interest. As a result, Aldred and Colaizzi remained in the background while Dahlhausen

conducted all negotiations with Radabaugh. Simultaneously, Dahlhausen conducted negotiations with Aldred and Colaizzi regarding the terms of the purchase of Radabaugh's interest.

{¶ 8} In September 2001, Dahlhausen flew to Dallas, where he met Colaizzi, Aldred, and Aldred's wife for dinner. Dahlhausen claims that he went to Dallas at Colaizzi's request to explain to Aldred and his wife the nature of the business. During the meeting, the parties discussed the potential purchase of Radabaugh's interest by Aldred and Colaizzi and relocating the RAL lab to Texas. According to Aldred and Colaizzi, the meeting involved a general discussion about Dahlhausen's negotiations with Radabaugh and the fact that Aldred and Colaizzi would pay whatever price Radabaugh would receive for his ownership interest in RAL.

{¶ 9} The parties did not reach an agreement during the Dallas meeting. Negotiations continued, with daily communications between Dahlhausen and Colaizzi. According to Dahlhausen, the three men eventually reached the following oral agreement in October 2001: the parties agreed to value RAL at $250,000; Radabaugh would be paid $125,000 for his 50 percent interest in RAL; Dahlhausen would receive $41,667 to buy down his interest in RAL from 50 percent to 33⅓ percent; as a result, Dahlhausen, Colaizzi, and Aldred would each own one third; the lab would be relocated to Dallas; and Dahlhausen would continue receiving his $52,000 annual salary in exchange for interpreting test results in Clermont County, Ohio. Dahlhausen claimed that the oral agreement was reached between the three men in their individual capacities.

{¶ 10} Aldred and Colaizzi claim that Dahlhausen entered into an agreement with Radabaugh to purchase his 50 percent interest in RAL and then transferred all RAL assets to a new Texas corporation, Avian, in exchange for a one-third ownership interest in Avian. Avian was formed in Texas on December 5, 2001. Dahlhausen was made a director, officer, and shareholder of Avian. A checking account was opened in Avian's name in Texas and was originally funded by Aldred's wife with $175,000.

{¶ 11} In December 2001, Dahlhausen entered into a stock purchase agreement with Radabaugh to purchase Radabaugh's ownership interest in RAL and a related veterinary practice for $125,000. Between December 2001 and February 2002, Radabaugh received three checks totaling $125,000 signed by Dahlhausen and issued from Avian's Texas bank account. Dahlhausen claims that the checks were sent to him by Aldred and Colaizzi, who instructed him as to the amount and when to pay them. He also claims that the stock-purchase agreement was not reflective of his oral agreement with Aldred and Colaizzi.

{¶ 12} According to Aldred and Colaizzi, Avian began operating from its Texas base in March 2002. RAL was dissolved in December 2002. Dissolution documents list Dahlhausen as the sole owner of RAL. In 2002 and part of 2003,

Dahlhausen received hundreds of test results from Avian, which he interpreted in Clermont County, Ohio before sending them back to Texas. He resigned in early May 2003. He never received the $41,667 and received only $7,000 for his services in 2002–2003.

{¶ 13} In July 2008, Dahlhausen filed an amended complaint against the three defendants alleging several contract and tort claims. Specifically, Dahlhausen alleged claims of (1) breach of oral contract, (2) rescission and restitution, (3) unjust enrichment, (4) quantum meruit, (5) fraud and misrepresentation, and (6) conversion against Aldred and Colaizzi (Counts I through VI), and sought compensatory and punitive damages, costs, and attorney fees from all three defendants. Dahlhausen also alleged claims of (1) defamation, (2) libel, and (3) slander against Colaizzi only (collectively, the defamation claim) and sought damages.

{¶ 14} Following the filing of the original complaint, Aldred and Colaizzi moved to dismiss the complaint, alleging that the trial court lacked personal jurisdiction over them. Following an evidentiary hearing on the motion, the trial court granted the motion to dismiss in September 2008. The trial court (1) held that it lacked personal jurisdiction over Aldred and Colaizzi as to the contract and tort claims (Counts I through VI), (2) held that it had personal jurisdiction over Colaizzi as to the defamation claim, (3) relying on the doctrine of forum non conveniens, found that allowing Dahlhausen to pursue only one claim against one defendant in Ohio "would undermine the concept of judicial efficiency," and (4) granted the motion to dismiss in its entirety.

{¶ 15} On October 31, 2008, the trial court issued a second decision taking into account the addition of Avian as a defendant. Consistent with its previous decision, the trial court found that it lacked personal jurisdiction over Aldred and Colaizzi as to Counts I through VI, but had personal jurisdiction over Colaizzi as to the defamation claim. The trial court also found that it had personal jurisdiction over Avian as to Counts I through VI. The trial court noted that having jurisdiction over Colaizzi as to the defamation claim allowed it to exercise jurisdiction over Colaizzi, but not Aldred, as to Dahlhausen's other claims. As a result, because some of Dahlhausen's claims were properly seated in Ohio but others would have to be tried in Texas, the trial court ordered the parties to brief the issue of the application of the doctrine of forum non conveniens.

{¶ 16} On April 7, 2009, the trial court dismissed Counts I through VI against Colaizzi and Avian pursuant to the doctrine of forum non conveniens, dismissed Counts I through VI against Aldred for lack of personal jurisdiction, and allowed Dahlhausen to pursue his defamation claim against Colaizzi in Ohio. The dismissal of the counts against Avian and Colaizzi was conditioned upon the

successful refiling of the claims in Texas to ensure the availability of an alternative forum.

{¶ 17} Dahlhausen appeals, raising two assignments of error.

{¶ 18} Assignment of Error No. 1:

{¶ 19} "The trial court erred in determining that the defendants were not subject to personal jurisdiction under Ohio's long-arm statute."

{¶ 20} Dahlhausen argues that the trial court erred in finding that it lacked personal jurisdiction over Aldred and Colaizzi with regard to Counts I through VI. Dahlhausen asserts that the trial court has personal jurisdiction over the two Texas residents under R.C. 2307.382(A)(1) with regard to the contract claims (Counts I through IV) as a result of the parties' substantial negotiations over ten months, Colaizzi's numerous phone calls to Ohio, and the Texas residents' purchase of a two-third interest in RAL under the parties' oral agreement. Dahlhausen also asserts that the trial court has personal jurisdiction over the two Texas residents under R.C. 2307.382(A)(3), (4), and (6) with regard to the tort claims, including the defamation claim.

{¶ 21} We review a trial court's judgment granting a motion to dismiss for lack of personal jurisdiction de novo. *Buflod v. Von Wilhendorf, L.L.C.,* Warren App. No. CA2006–02–022, 2007-Ohio-347, 2007 WL 210790, ¶ 10. Where a nonresident defendant asserts that the trial court lacks personal jurisdiction over his person, the plaintiff has the burden to establish the court's jurisdiction. *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 307, 14 OBR 371, 471 N.E.2d 165. Where the trial court conducts an evidentiary hearing on the motion to dismiss, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence. Id.; *Friedman v. Speiser, Krause & Madole, P.C.* (1988), 56 Ohio App.3d 11, 14, 565 N.E.2d 607.

{¶ 22} When determining whether a state court has personal jurisdiction over a nonresident defendant, a trial court must first determine whether the defendant's conduct falls within Ohio's long-arm statute under R.C. 2307.382. If it does, the trial court must then determine whether granting jurisdiction would deprive the defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477.

{¶ 23} Dahlhausen first asserts that the trial court has personal jurisdiction over the contract claims under R.C. 2307.382(A)(1), which states: "A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's [t]ransacting any business in this state." R.C. 2307.382(A)(1) is very broadly worded and permits jurisdiction over

a nonresident defendant who is transacting any business in Ohio. *Kentucky Oaks Mall*, 53 Ohio St.3d at 75, 559 N.E.2d 477.

{¶ 24} To "transact" means "to prosecute negotiations; to carry on business; to have dealings." Id. The mere solicitation of business by a foreign corporation does not constitute transacting business in Ohio. *U.S. Sprint Communications Co., Ltd. Partnership v. Mr. K's Foods, Inc.* (1994), 68 Ohio St.3d 181, 185, 624 N.E.2d 1048. Rather, "a nonresident's ties must create a 'substantial connection' with the forum state." Id. Whether a nonresident defendant has transacted any business in Ohio is a case-by-case determination. Id.

{¶ 25} At the outset, we note that Dahlhausen argues that Aldred and Colaizzi transacted business in Ohio by citing cases such as *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, and by framing the issue in terms of whether the Texas residents "purposely availed themselves of the privilege of doing business" in Ohio, whether their acts "have a sufficiently substantial connection" with Ohio, and similar phrases. However, those cases and phrases fall under the second prong of the test in *Kentucky Oaks Mall*—that is, whether granting jurisdiction would deprive the defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution, and not whether nonresident defendants have transacted business in Ohio pursuant to R.C. 2307.382(A)(1).

{¶ 26} It is undisputed that in 2001 the parties began discussing the possibility of Aldred and Colaizzi's buying Radabaugh's ownership interest in RAL. Negotiations ensued and involved numerous exchanges of phone calls and e-mails between Dahlhausen and Colaizzi, Aldred's trip to the RAL lab in Ohio, and Dahlhausen's trip to Texas.

{¶ 27} The parties presented differing versions as to who initiated the negotiations. Dahlhausen and Colaizzi also both testified that a number of telephone or e-mail exchanges between them involved avian matters, and not the purchase of Radabaugh's ownership interest in RAL. Assuming Colaizzi initiated the negotiations and subsequently contacted Dahlhausen in Ohio on a daily basis regarding the negotiations, we find it well established that the mere solicitation of business by a nonresident defendant does not constitute transacting business in Ohio. See *U.S. Sprint Communications*, 68 Ohio St.3d at 185, 624 N.E.2d 1048. Nor does the mere fact that parties engage in various communications incident to their transaction. See *Buflod*, 2007-Ohio-347, 2007 WL 210790 at ¶ 14. In addition, given the conflicting evidence and without more, Dahlhausen has failed to prove the trial court's jurisdiction by a preponderance of the evidence. See *Friedman*, 56 Ohio App.3d at 14, 565 N.E.2d 607.

{¶ 28} Prior to negotiating with Dahlhausen, neither Aldred nor Colaizzi had ever conducted business in Ohio, owned property in Ohio, or advertised or solicited business in Ohio. Neither Texas resident had, or has, a registered agent to receive service in Ohio.

{¶ 29} During the negotiations, Aldred visited the RAL lab in Ohio. Again, the parties presented differing versions as to the purpose of Aldred's visit. Dahlhausen claims that the visit, which included a PowerPoint presentation at the request of Colaizzi to promote RAL and pique Aldred's interest in RAL, was in furtherance of the ongoing negotiations. By contrast, Aldred claims that the visit, which was attended by Radabaugh, was merely in response to Dahlhausen's open invitation to visit the RAL lab and was not in furtherance of any pending transaction between the parties. Again, given this conflicting evidence and without more, Dahlhausen has failed to prove the trial court's jurisdiction by a preponderance of the evidence. See *Friedman,* 56 Ohio App.3d at 14, 565 N.E.2d 607.

{¶ 30} In September 2001, Dahlhausen flew to Texas, where he met Colaizzi, Aldred, and Aldred's wife. During the meeting, discussions regarding the purchase of Radabaugh's interest in RAL by Colaizzi and Aldred took place. In December 2001, Dahlhausen alone entered into a stock-purchase agreement with Radabaugh to purchase Radabaugh's 50 percent interest in RAL. That same month, Avian was formed in Texas; Dahlhausen was made a director, officer, and shareholder of the Texas corporation. It is undisputed that Dahlhausen alone conducted all negotiations with Radabaugh regarding the purchase of the latter's interest in RAL; Aldred and Colaizzi remained in the background.

{¶ 31} Radabaugh was subsequently paid $125,000 for his ownership interest in RAL, with three checks signed by Dahlhausen and issued from Avian's Texas bank account. Avian started operating in March 2002. RAL was dissolved in December 2002. Dissolution documents filed with the state of Ohio named Dahlhausen as the sole owner of RAL.

{¶ 32} Given all of the foregoing, we cannot say that Aldred and Colaizzi transacted business in Ohio pursuant to R.C. 2307.382(A)(1). The parties' interstate negotiations during 2001 and the individual involvement, if any, of Aldred and Colaizzi in RAL that same year were secondary and contingent upon Dahlhausen's own negotiations with Radabaugh. Once Dahlhausen became the sole owner of RAL, Aldred and Colaizzi never became individually involved in RAL. Rather, all subsequent aspects of the disputed transaction between the parties took place between Dahlhausen, RAL, and Avian in that all of RAL's assets were ultimately transferred to Avian. We agree with the trial court that "the actions of Aldred and Colaizzi lack the requisite strength of connection to Ohio so as to reasonably permit an exercise of jurisdiction over them. At most,

the negotiations between the parties appear to have led to the formation of a corporation under the laws of Texas which then 'transacted business' with an Ohio corporation and an Ohio resident within the purview of R.C. 2307.382(A)(1)."

{¶ 33} In light of the foregoing, we find that Dahlhausen has failed to establish the trial court's personal jurisdiction over Aldred and Colaizzi under R.C. 2307.382(A)(1) with regard to the contract claims. Because Dahlhausen failed to establish the court's jurisdiction under Ohio's long-arm statute, we do not address the second prong under *Kentucky Oaks Mall* (whether granting jurisdiction to an Ohio court comports with due process). See *Kentucky Oaks Mall*, 53 Ohio St.3d at 75, 559 N.E.2d 477. The trial court did not err in finding that it lacked personal jurisdiction over Aldred and Colaizzi with regard to Counts I through IV and in subsequently dismissing those counts.

{¶ 34} Dahlhausen next asserts that the trial court has personal jurisdiction over the tort claims under R.C. 2307.382(A)(3), (4), and (6). Dahlhausen includes the defamation claim as a tort claim under this assignment of error. The statutory provisions allow a court to exercise its jurisdiction over claims arising from a defendant's "[c]ausing tortious injury by an act or omission in [Ohio]," R.C. 2307.382(A)(3); "[c]ausing tortious injury in [Ohio] by an act or omission outside [Ohio] if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenues from goods used or consumed or services rendered in [Ohio]," R.C. 2307.382(A)(4); and "[c]ausing tortious injury in [Ohio] to any person by an act outside [Ohio] committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in [Ohio]," R.C. 2307.382(A)(6).

{¶ 35} In his brief, Dahlhausen simply asserts that the fraudulent and unjust acquisition of his business interest by Aldred and Colaizzi without paying for it and Colaizzi's acts of libel, slander, and defamation have caused injury and damage to him in Ohio. As a result, the trial court has jurisdiction over the tort claims under R.C. 2307.382(A)(3), (4), and (6). It is undisputed, and Colaizzi so conceded below, that the trial court has personal jurisdiction over the defamation claim under R.C. 2307.382(A)(6); that finding by the trial court is not before us on appeal.[3]

{¶ 36} The trial court found that because the substantive dealings occurred between Dahlhausen and Avian (in that Dahlhausen consolidated his entire ownership of RAL before all of RAL's assets were transferred to Avian), the

---

3. What is on appeal before us, however, is the trial court's finding that the doctrine of forum non conveniens does not apply to the defamation claim, and therefore the defamation claim can be tried in Ohio (see cross-assignment of error).

claimed injuries did not result from any act or omission by Aldred or Colaizzi that took place in Ohio. See R.C. 2307.382(A)(3). Likewise, because the evidence did not show that Aldred or Colaizzi themselves (1) regularly did or solicited business in Ohio, (2) engaged in a persistent course of conduct within Ohio, or (3) derived substantial revenue from goods used or consumed or services rendered in Ohio (in that after Avian began its Texas operation, Dahlhausen performed testing-related services in Ohio for Avian's benefit), the trial court found that it lacked jurisdiction over Counts V and VI under R.C. 2307.382(A)(4).

{¶ 37} Upon a thorough review of the record, we find that the evidence supports the trial court's findings. Dahlhausen has failed to establish the trial court's personal jurisdiction over Aldred and Colaizzi under R.C. 2307.382(A)(3) and (4) with regard to the tort claims (Counts V and VI). Because Dahlhausen failed to establish the court's jurisdiction under Ohio's long-arm statute, we do not address the second prong under *Kentucky Oaks Mall* (whether granting jurisdiction to an Ohio court comports with due process). See *Kentucky Oaks Mall*, 53 Ohio St.3d at 75, 559 N.E.2d 477. The trial court, therefore, did not err in finding that it lacked personal jurisdiction over Aldred and Colaizzi with regard to Counts V and VI and in subsequently dismissing those counts.

{¶ 38} Dahlhausen's first assignment of error is overruled.

{¶ 39} Assignment of Error No. 2:

{¶ 40} "The trial court erred in dismissing Dahlhausen's remaining claims under the doctrine of forum non conveniens."

{¶ 41} Dahlhausen argues that the trial court erred in dismissing his claims against Avian under the doctrine of forum non conveniens. We note that Dahlhausen does not challenge the trial court's analysis of the doctrine as to his claims against Avian. Rather, he simply asserts that because the trial court's dismissal of his claims against Avian was based upon the court's erroneous determination that it lacked personal jurisdiction over Aldred and Colaizzi, "its dismissal of claims against Avian on grounds of forum non conveniens * * * was therefore necessarily an abuse of discretion."

{¶ 42} The doctrine of forum non conveniens allows a trial court to decline to exercise jurisdiction over cases when convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum. See *Chambers v. Merrell–Dow Pharmaceuticals, Inc.* (1988), 35 Ohio St.3d 123, 519 N.E.2d 370. Under Dahlhausen's first assignment of error, we held that the trial court properly determined that it lacked personal jurisdiction over Aldred and Colaizzi as to Counts I through VI. As a result, we need not address the argument that the trial court's dismissal of Dahlhausen's claims

against Avian under the doctrine of forum non conveniens was an abuse of discretion. The second assignment of error is overruled.

{¶ 43} Cross-assignment of Error:

{¶ 44} "The trial court erred in failing to dismiss Count VII as to the defendant-appellee Colaizzi."

{¶ 45} In its September 2008 decision, the trial court found that it lacked jurisdiction over Aldred and Colaizzi as to Counts I through VI but had personal jurisdiction over Colaizzi as to the defamation claim and granted the motion to dismiss in its entirety pursuant to the doctrine of forum non conveniens. The trial court reasoned that allowing Dahlhausen to pursue only one claim (out of 13 claims) against one defendant in Ohio "would undermine the concept of judicial efficiency [which] requires that the entire dispute be resolved in a single forum, without needless duplication of evidence and expense. Furthermore, the convenience of the parties and witnesses would be best served by a single trial in a single location. Under the circumstances, the proper forum for all of [Dahlhausen's] claims would be Texas."

{¶ 46} Following the addition of Avian as a defendant, the trial court issued a decision in October 2008, finding once again that it lacked jurisdiction over Aldred and Colaizzi as to Counts I through VI but had personal jurisdiction over Colaizzi as to the defamation claim. The court also found that it had personal jurisdiction over Avian as to Counts I through VI. On April 7, 2009, the trial court dismissed Counts I through VI against Aldred for lack of personal jurisdiction and dismissed Counts I through VI against Colaizzi and Avian pursuant to the doctrine of forum of non conveniens (thereby dismissing 18 claims), but allowed Dahlhausen to pursue one claim, the defamation claim, against Colaizzi in Ohio. The trial court did not refer to its earlier contradictory decision or "reason it away." In light of the foregoing, the defendants argue that the trial court's failure to dismiss the defamation claim was an abuse of discretion.

{¶ 47} The ultimate inquiry under the doctrine of forum non conveniens is "where [a] trial will best serve the convenience of the parties and the ends of justice." *Chambers*, 35 Ohio St.3d at 127, 519 N.E.2d 370. The doctrine furnishes criteria that "are to be applied flexibly, with each case turning on its own facts." Id. at 126, 519 N.E.2d 370. These factors may be divided into the private interests of the litigants and factors of public interest involving the courts and citizens of the forum. Id. at 126, 519 N.E.2d 370.

{¶ 48} Important private interests include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical

problems that make trial of a case easy, expeditious, and inexpensive. There may also be questions as to the enforceability of a judgment if one is obtained." Id. at 126–127, 519 N.E.2d 370.

{¶ 49} Public interest factors to be considered include "the administrative difficulties and delay to other litigants caused by congested court calendars, the imposition of jury duty upon the citizens of a community which has very little relation to the litigation, a local interest in having localized controversies decided at home, and the appropriateness of litigating a case in a forum familiar with the applicable law." Id. at 127, 519 N.E.2d 370.

{¶ 50} "The forum non conveniens determination is committed to the sound discretion of the trial court [and] may be reversed only when there has been a clear abuse of discretion." Id. "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Id.; *Cincinnati Ins. Co. v. Allstate Property & Cas. Ins. Co.*, Butler App. No. CA2009–01–017, 2009-Ohio-3540, 2009 WL 2140146, ¶ 15. Because "[o]ur * * * task is to determine whether the trial court below properly employed the doctrine of *forum non conveniens*, considering all the relevant private and public interest factors and the weight given to each[,] [we] will not independently assess and reweigh each factor * * *." *Chambers*, 35 Ohio St.3d at 132–133, 519 N.E.2d 370; *Cincinnati* at ¶ 16.

{¶ 51} According to Dahlhausen, Colaizzi defamed him by showing to Avian employees in Texas and employees of Colaizzi's Texas pet store papers connecting Dahlhausen's name to pornographic websites, by posting Dahlhausen's name on pornographic websites, by making disparaging comments in e-mails sent from the Avian lab to various Internet groups, and by making disparaging remarks during an annual industry trade show in Chicago, Illinois, to one of Dahlhausen's Ohio customers. Members of the Internet groups represent a large cross-section of the avian industry and include current or potential customers, veterinarians, researchers, past and current officers of national organizations, business owners, and aviculturalists. Dahlhausen asserts that he has a national reputation and has presented papers both nationally and internationally. Dahlhausen claims that the numerous disparaging remarks discredit his credentials and expertise in the avian field and destroy his reputation among his peers and customers.

{¶ 52} The trial court declined to dismiss Dahlhausen's defamation claim against Colaizzi in Ohio, on the grounds that Texas courts have a limited subpoena power; that because the defamation claim concerns only Colaizzi, there is no risk that an inconsistent ruling may issue from another court and the claim

is readily severable from Dahlhausen's other claims against the three defendants; and that any harm stemming from the defamation claim has befallen an Ohio resident and will have continuing repercussions within Ohio.

{¶ 53} We find that the trial court's balancing of the relevant public and private interest factors is not reasonable. The fact that the defamation claim is readily severable and does not involve a risk of inconsistent ruling favors neither jurisdiction. While Dahlhausen is an Ohio resident, most of Colaizzi's defamatory conduct occurred in Texas and involved Texas employees and/or occurred through e-mails sent from Texas to Internet groups. The state of origin for most of Colaizzi's defamatory conduct is Texas. That is also where Colaizzi's employees (who likely would be witnesses in any court proceedings) and the majority of the sources of proof (Internet postings, e-mails) are located. See *Lee v. Burnett,* Franklin App. No. 07AP–40, 2007-Ohio-3742, 2007 WL 2110801. Colaizzi's conduct allegedly discredits Dahlhausen's reputation not merely in Ohio but nationally as well (and perhaps to some extent internationally).

{¶ 54} In addition, the trial court's decision dismisses 18 claims (out of a total of 19 claims) yet retains jurisdiction over one lone claim. As the trial court originally found when it addressed Dahlhausen's 13 claims against Aldred and Colaizzi, allowing Dahlhausen to pursue only one claim against one defendant in Ohio "would undermine the concept of judicial efficiency [which] requires that the entire dispute be resolved in a single forum, without needless duplication of evidence and expense. Furthermore, the convenience of the parties and witnesses would be best served by a single trial in a single location." The proper forum for all of Dahlhausen's 19 claims is in Texas.

{¶ 55} We therefore find that the trial court abused its discretion when it failed to dismiss the defamation claim pursuant to the doctrine of forum non conveniens. The cross-assignment of error is well taken and sustained.

{¶ 56} The judgment is affirmed in part and reversed in part, and the cause is remanded for further proceedings in accordance with the law and consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

POWELL and HENDRICKSON, JJ., concur.