O’Donnell, J.,
dissenting.
{¶ 75} Respectfully, I dissent. Today, the majority has extended the personal jurisdiction of Ohio courts to cover any individual in any state who purchases a product from an Ohio company and posts a criticism of it on the Internet with the intent to damage the seller. This holding changes long-arm jurisdiction dramatically. In my view, because minimum contacts with Ohio are not present in all *95 such circumstances, the majority’s holding does not withstand due process scrutiny.
{¶ 76} “[T]he constitutional touchstone [of long-arm jurisdiction] remains whether the defendant purposefully established ‘minimum contacts’ in the forum State.” Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528. While the majority focuses on the fact that Roberts could foresee and even intended to cause injury to Kauffman Racing Equipment, L.L.C. (“KRE”), an Ohio company, the United States Supreme Court “has consistently held that this kind of foreseeability is not a ‘sufficient benchmark’ for exercising personal jurisdiction.” Id., quoting World-Wide Volkswagen Corp. v. Woodson (1980), 444 U.S. 286, 295, 100 S.Ct. 559, 62 L.Ed.2d 490. Rather, personal jurisdiction is proper if the defendant’s conduct and connections with the forum state “proximately result from actions by the defendant himself that create a ‘substantial connection’ with the forum State.” (Emphasis sic.) Id. at 475, quoting McGee v. Internatl. Life Ins. Co. (1957), 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223. The defendant’s actions must have created that connection to such a degree that he “ ‘should reasonably anticipate being haled into court there.’ ” Id., quoting World-Wide Volkswagen at 297, 100 S.Ct. 559, 62 L.Ed.2d 490. When the defendant does not have an ongoing relationship with the forum state, a defendant must deliberately engage in significant activities within that state and “ ‘purposefully direct[ ]’ his activities at residents of the forum” to satisfy this standard. Id. at 472, quoting Keeton v. Hustler Magazine, Inc. (1984), 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.E.2d 790; see also Anilas, Inc. v. Kern (1987), 31 Ohio St.3d 163, 164, 31 OBR 366, 509 N.E.2d 1267 (“the focus of analysis ought to be whether one purposely established contacts with the forum state” [emphasis sic]).
{¶ 77} Relying primarily on Calder v. Jones (1984), 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804, the majority concludes that Roberts exercised minimum contacts with Ohio sufficient to satisfy due process because he posted defamatory comments relating to a consumer transaction with KRE on three websites, intending them to have effects felt in Ohio, and the evidence indicates that five identified Ohio residents read them. However, Calder does not conclusively confer jurisdiction in the forum state simply because the defendant’s intended effects of the communication are felt in that state. Rather, the court in Calder considered the location of the injury and the pervasive nature of the contact when assessing whether the defendants had the minimum contacts with the forum state. The court stressed that the newspaper in which the article appeared, the National Enquirer, had its largest circulation, almost twice that in any other state, in California, where the plaintiff resided. It was that detail coupled with the fact that the person about whom the article was written lived and would suffer injury in California that rendered California the focal point of the publica *96 tion. Based upon those facts, the court identified minimum contacts sufficient to demonstrate that the defendants could “reasonably anticipate being haled into court there.” Id. at 790, quoting World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490.
{¶ 78} But the facts of this case are easily distinguishable from those in Colder. Here, Roberts posted his comments on three general auto-racing websites and an auction site, none of which have any specific connection to Ohio or are more likely to be viewed by a resident of Ohio than by a resident of any other state. In fact, KRE could identify only five Ohio residents it believes actually viewed Roberts’s comments. In Colder, on the other hand, the National Enquirer sold approximately 600,000 copies of the offending article in the forum state. Calder, 465 U.S. at 785, 104 S.Ct. 1482, 79 L.Ed.2d 804. The reach of Roberts’s comments to Ohio residents is not at all comparable to the reach of the National Enquirer’s circulation to California residents.
{¶ 79} By merely posting to general websites, Roberts neither deliberately engaged in significant activities within Ohio nor purposefully directed his activities at an Ohio resident sufficiently to establish minimum contacts and satisfy due process — regardless of his intent.[1] See, e.g., Oasis Corp. v. Judd (S.D.Ohio 2001), 132 F.Supp.2d 612, 623 (declining to find jurisdiction because “[t]he computers hosting Defendants’ [webjsite are not located in Ohio, there has been no meaningful interactivity between the site and a significant number of Ohioans, and the site is not directed toward an Ohio audience * * *”); see also Young v. New Haven Advocate (C.A.4, 2002), 315 F.3d 256, 263 (“the fact that the newspapers’ websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the newspapers were intentionally directing their website content to a Virginia audience”). While it is evident from Roberts’s Internet posts that he sought to discourage others from purchasing KRE’s products, any individual who posts a negative review of a product or service in a public forum arguably seeks the same objective. Subjecting all individuals to suit in Ohio who post Internet reviews — no matter how scathing — of purchases made from Ohio companies does not comport with the due process notions of “fair play and substantial justice.” Internatl. Shoe Co. v. Washington, Office of Unemp. & Placement (1945), 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95.
*97 Brett Jaffe and Dennis C. Belli, for appellee.
Kepko & Phillips Co., L.P.A., William J. Kepko, and Sherry M. Phillips, for appellant.
{¶ 80} The foreseeability of causing injury to an Ohio company, whether the injury is intended or not, without directing activity at forum residents, is not sufficient to establish minimum contacts. See Burger King, 471 U.S. at 474, 105 S.Ct. 2174, 85 L.Ed.2d 528; see also New Haven Advocate, 315 F.3d at 263 (narrowly construing Calder and holding that “[t]he newspapers must, through the Internet postings, manifest an intent to target and focus on Virginia readers”). Notwithstanding this traditional jurisdictional principle, the majority has provided an avenue for any affected Ohioan to sue the originator of any negative Internet post in an Ohio court when the product has been purchased in Ohio and the negative post is read by an Ohio resident. But this standard falls far short of due process.
{¶ 81} Since this case is limited to the jurisdictional aspects of the litigation, the parties have not briefed, nor has the court addressed, the First Amendment rights of those who post comments on the Internet. The Supreme Court of the United States in Calder “rejected] the suggestion that First Amendment concerns enter into the jurisdictional analysis [and] declined * * * to grant special procedural protections to defendants in libel and defamation actions in addition to the constitutional protections embodied in the substantive laws.” Calder, 465 U.S. at 790-791, 104 S.Ct. 1482, 79 L.Ed.2d 804. Nonetheless, the practical impact of the majority’s holding in this case is to unnecessarily chill the exercise of free speech.
{¶ 82} Because Roberts’s conduct does not establish minimum contacts with Ohio sufficient to comport with due process, I would reverse the judgment of the court of appeals.
Lanzinger, J., concurs in the foregoing opinion.

. The majority does not find sufficient contacts to confer jurisdiction based solely on the parties’ underlying transaction, nor should it. See Clark v. Connor (1998), 82 Ohio St.3d 309, 314, 695 N.E.2d 751, 756, quoting Burger King, 471 U.S. at 479, 105 S.Ct. 2174, 85 L.E.2d 528 (finding that an in-state plaintiffs contract with an out-of-state defendant, standing alone, does not establish sufficient minimum contacts and that “ ‘prior negotiations and contemplated future consequences, along with the terms of the contract and the parties’ actual course of dealing’ ” must be considered). Here, while the transaction involved the purchase and return of a product, there is no evidence that the parties expressly or implicitly contemplated future consequences or a longer relationship.